ADELINE THOMAS *v.* BOARD OF SUPERVISORS OF HOLMES COUNTY.

1. CONSTRUCTION OF WRITING. *Mortgage. Conditional deed. Extrinsic evidence.*
   If the conditions and stipulations on the face of a conveyance of land leave it doubtful whether it was intended by the parties to be a mortgage, or a sale with the right to repurchase, extrinsic evidence is admissible to discover and effectuate the intent.

2. SAME. *Provisions on face of instrument. Indicia of a mortgage.*
   In construing such a conveyance made by a debtor to his creditor, the following provisions were held as tending to show it to be a conditional sale and not a mortgage : the release of the debt in consideration of the conveyance, and the absence thereafter of any personal obligation ; a stipulation making time of the essence of the right to re-acquire the land ; the fact that the relation of mortgagor and mortgagee already existed and the evident purpose to change the relation ; and, finally, decided benefits to accrue to the debtor from the change, and disadvantages to the creditor, which disadvantages would be even greater if the instrument were construed as a mortgage.

3. SAME. *Features indicating a mortgage.*
   And the following provisions of the instrument were held indicative of a mortgage and not a conditional deed : the right of possession reserved to the grantor ; his obligation during the time possession was reserved to pay a certain sum as interest on the purchase price ; the reservation of the right to redeem by repayment with interest of the exact sum recited as the consideration ; and the use of the technical term, redeem, to describe the right reserved to the grantor.

4. TAXATION. *Money secured by mortgage. Right to repurchase.*
   Since the court finds in this case that the instrument is a sale of land with the right to repurchase at a fixed price, and the land itself having been taxed, the action of the board of supervisors in listing for taxation the purchase price, as so much money secured by mortgage, was error and is annulled.

FROM the circuit court of Holmes county.
HON. C. H. CAMPBELL, Judge.
The opinion states the facts.

*Hooker & Wilson,* for appellant.
There is no hint in the record that the parties to the contract

intended to fraudulently evade the payment of any taxes. The sole evidence in the case shows that the transaction was intended to be a sale with right to repurchase. We therefore will discuss the contract as it appears on its face and in the light of the evidence.

That the instrument was not intended as a mortgage, clearly appears.

1. The lands were not worth more than the purchase price.

2. The essence of a mortgage is that it is a security for a debt which the grantor remains under a legal obligation to pay, and where no such legal obligation exists, an agreement to reconvey will not be deemed a mortgage but a privilege to repurchase. *Hoopes* v. *Bailey*, 28 Miss. 328; *Magee* v. *Catching*, 33 Ib. 672; *Klein* v. *McNamara*, 54 Ib. 90. A continuing and subsisting debt must be shown. 1 Jones on Mort., § 269, *et seq.*; 1 Dev. (N. C.) Eq., 373; 8 Tex. 389; 5 Wait, A. & D. 550; 2 Ib., 168; 26 Ala. 312; 29 Ib. 254; 2 Yerg. 215; 4 Jones Eq. (N. C.) 349; 2 Barb. 28. If the instrument extinguishes the debt, it is a sale notwithstanding the right to redeem. Am. & Eng. Encyl. Law, 425, citing 3 Pa. St. 208; 52 Vt. 32; 65 N. C. 520; 41 Mich. 488; 13 Vroom, 476; 30 Tex. 332; 46 Wis. 660; 29 Ala. 254; 31 N. Y. 542; 16 Iowa, 234; 26 Col. 514; 44 Mo. 429. If the exercise of the right to repurchase is optional with the grantor, and cannot be compelled by the grantee, there is no mortgage. 7 Cranch, 218; 60 Ala. 417; 8 Tex. 389; 18 Wend. 518.

3. The fact that the price to be paid and the value of the land are about the same is indicative of a sale.

4. While it is a circumstance tending to show the contract a mortgage, that interest on the price is to be paid, this is not conclusive. 1 Jones on Mort., § 273. In this case neither the principal nor the interest was a legal obligation. The interest was paid for the continuing right to repurchase at a fixed price. Keirn did not avail of this option, but waived his right to repurchase. He owed Thomas no more immediately after making the contract than he does now. He owes nothing now, and owed nothing then.

5. The action of the board of supervisors causes a double taxation, as the land has been taxed and the taxes paid.

6. A sale will be held conditional where the vendor reserves the right to resell on the buyer's default. 2 Benj. Sales, 806 ; *Lamond v. Davall*, 9 Q. B. 1030 [58 E. C. L.]. It would be equally true where the power reserved is the power to repurchase within a time which is fixed and limited.

7. The notes of Keirn bearing ten per cent. interest were cancelled, and other land secured by the mortgage was released, and the interest to be paid, if he wished to keep alive his option to repurchase, was at the rate of six per cent. This shows that the debt was not kept alive, but that a sale with a right to repurchase was intended.

*C. V. Gwin,* for appellee.

The form of the conveyance is immaterial, as it is obvious that its legal effect is to secure the payment of money—the repayment of a principal sum, and annual interest thereon at the stipulated rate of six per cent. The true inquiry is, what was the subject-matter of the negotiation between the parties ?

The terms, stipulations and provisions of the instrument preclude the idea that a purchase and sale was intended, and make it plain that the use of money and the security for the payment thereof was alone treated of by the parties. The effect of the transaction was to continue the old debt due to Thomas, and enable him to make a further and additional investment, perfectly secured, by taking up the debts against Keirn in the hands of other persons, and to consolidate the debts in his hands as sole creditor.

While it is true that a debt or the performance of a duty is the basis of a mortgage, it is by no means true that there must be a personal liability for the payment of the debt or performance. The debt or duty may, and often does exist only as against the thing mortgaged. 1 Jones on Mort., §§ 70, 272, 273.

In this case the grantor retained possession, paid taxes, and interest *eo nomine* was annually to be paid. It is more difficult to conceive of interest without a debt than of a mortgage without personal liability. See 1 Jones on Mort., §§ 242–246 ; 35 Am. Dec. 356 ; 20 Ib. 145 ; 27 Ib. 346 ; 23 Ib. 722 ; 50 Ib. 196 ; 55 Ib. 779 ; 6 Watts, 405 ; 3 Tex. 1.

In this instrument nothing appears to indicate an intent to make a conditional sale in substance and in fact. In a contest between Keirn and Thomas no court would hesitate to decide that the former had the right to redeem. The technical term redeem is used by them. The stipulations in the instrument are such as are incident to every mortgage. 1. The grantor retains right of possession, and pays nothing for the use of the land. 2. He assumes to pay taxes and assessments. 3. He paid annual interest on the debt against his land. 4. The right was reserved not to buy back the land, but to redeem it.

Public policy demands that the state's revenues be protected from fraud and evasions, and forbids that one should put his money out at interest, take security for its payment and evade just taxation by calling the security a conditional sale.

The instrument in this case being a security, the money secured was properly assessed for taxes under § 497, code 1880.

COOPER, J., delivered the opinion of the court.

This is a controversy between the board of supervisors of Holmes county and appellant touching the liability of appellant to be assessed and pay taxes for the years 1884, 1885, 1886, 1887 and 1888 on the sum of $46,071.05, which the board contends she owned as personal property during such years. The facts are, that prior to the year 1884 one Keirn was indebted to William S. Thomas, the husband of appellant (who is now dead, leaving her his sole heir-at-law and distributee), in a large sum of money, the payment of which was secured by a mortgage on a large body of lands in Holmes county. Keirn was also indebted to many other persons whose debts were secured by mortgages on other lands. On the 17th of May, 1884, an arrangement was entered into between Keirn and Thomas by which Thomas surrendered and cancelled the notes he then held against Keirn, and assumed the payment of a note of $6181.25 due by Keirn to one Jenkins. The sum of the notes surrendered and of that the payment of which Thomas assumed was $46,071.05. In consideration of this surrender of his debt by Thomas and of his assumption to pay the

debt to Jenkins, Keirn on that day executed a conveyance of a large quantity of lands, being the same lands before that time mortgaged to secure the payment of the notes above mentioned. The conveyance is in usual form in its recital of the consideration paid and the description of the land conveyed, and then proceeds thus : "This deed is, however, conditional that the said W. L. Keirn shall have the right to redeem said lands at any time within five years from the date hereof, or before the title of the said Thomas has become absolute, by paying to said Thomas the sum of $46,071.05, with 6 per cent. interest thereon from date hereof. If the said Keirn shall fail to pay annually on the 17th day of May the accrued interest on said sum of $46,071.05, then the title of said second party becomes absolute and perfect, and the said Keirn shall be barred of all further right of redemption, and the said Thomas or his heirs shall be entitled to the immediate possession and control of said lands, which it is agreed shall hereby be delivered to him and his heirs. And if said Keirn at the expiration of said five years shall fail or refuse to pay said sum of $46,071.05, with any accrued interest that may be due thereon, or any part thereof, then the title of said second party to said lands shall become absolute and perfect, and he shall be entitled to the immediate possession and control of the same as his own property, and the said Keirn shall be barred of further rights therein. The said Keirn shall have the right to the possession of said lands until the failure to pay said interest annually occurs, or of failure to pay said sum of $46,071.05, or any part thereof, as hereinbefore agreed, he, the said Keirn, keeping all the taxes and assessments against said lands paid off and so discharged."

But little parol evidence was introduced by either party, but Mr. Hooker, a witness for appellant, stated that, "before the execution of the deed, Dr. Keirn was indebted to William Thomas in a large sum of money, and to Jenkins and other parties. About the time of the execution of the deed a scheme was formed by which it was supposed that Dr. Keirn could be released entirely from debt, and save some part of his property. Mr. Thomas bought from Dr. Keirn the places described in the deed, and in payment thereof

delivered up to him his notes, which bore 10 per cent. interest, and all evidences of debt, and released him from all obligations to him. This was a *bona fide* purchase, and not a loan of money.   Dr. Keirn did not owe Mr. Thomas anything, nor had Mr. Thomas any claim which he could enforce against Keirn.   The scheme fell through, and Dr. Keirn desired of Mr. Thomas the privilege of repurchasing the land within five years by paying the taxes on the land, and about $2700 annually.   Thomas could not have sold the land on account of the agreement held by Keirn."   The fact appears, by a quit-claim deed made by Keirn to Mrs. Thomas, that, before the hearing of this cause by the board of supervisors, Keirn had surrendered his right of redemption, and taken a lease of the land for an additional term of years.

Conceding for the purposes of this examination, the power of the board of supervisors to apply equitable principles to contradict the express language of a deed, and conceding its power to re-examine the subject of the liability of Mrs. Thomas to taxation on the property or debt notwithstanding the conclusions reached by the board in preceding years that she was not, we dispose of the cause upon its merits.   Looking alone to the deed, we find some of its features to be those of a mortgage, and some those of a conditional sale.   The release of the debt from Keirn to Thomas, in consideration of the conveyance; the absence thereafter of any personal obligation or duty on the part of Keirn to pay anything to Thomas; the stipulation making time of the essence of the right to re-acquire the land; the fact that before the execution of the deed the relation of mortgagor and mortgagee had existed, and the evident purpose to change such relationship; the fact that by the change then made Keirn secured decided benefits, and that by such arrangement Thomas was put at serious disadvantage by surrendering notes then due and drawing interest at 10 per cent. upon which Keirn was personally responsible, and that to construe the instrument as a mere mortgage would add to the loss he has submitted to—are circumstances tending to show that the contract was for a conditional sale, and not for a mortgage.   On the other hand, the agreement of Keirn to pay a stipulated sum per annum as " interest" on the pur-

chase price during the five years in which the conveyance reserved to him possession of the land; the fact that such right of possession was reserved; the fact that the deed reserved the right to redeem by repayment of the exact sum recited as the consideration of the conveyance; and the use of the technical word "redeem" by the parties to describe the right reserved to Keirn—are *indicia* tending to show that the conveyance was intended to be a mortgage, and not a conditional sale.

An examination of the authorities discloses that, while one or the other of such circumstances has in particular cases been powerful in determining the character of the instrument, each case was decided upon its own facts, and, where doubt existed on the face of the instrument, the court sought by the aid of extraneous evidence to discover and effectuate the intent of the parties. The authorities are collected in 1 Jones on Mortgages, chap. 7.

The testimony of Mr. Hooker, who is of counsel for Mrs. Thomas, and was familar with the intention and purpose of the parties, is conclusive, in our opinion, of their understanding and design, and is supported by the evidence that, before the hearing by the board of supervisors, Keirn dealt with his right as one for repurchase only, and surrendered it to Mrs. Thomas. Taxes have been paid to the county on the lands, which, in our opinion, were the lands of Mrs. Thomas, and she should not have been assessed with the purchase-price paid for them as so much money secured by mortgage on them.

*The judgment is reversed, the action of the board directing the assessment vacated and the assessment annulled.*